UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HENRY HENCE,

      Plaintiff,                                     Hon. Janet T. Neff

v.                                                   Case No. 1:08 CV 1231

MARY BERGHUIS, et al.,

      Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (Dkt. #54). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions to dismiss or for summary judgment, the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's Second Amended Complaint. (Dkt. #53). The events giving rise to this action occurred while Plaintiff was incarcerated at the Brooks Correctional Facility (LRF). Plaintiff requested that he be housed in a "nonsmoking" (i.e. tobacco free) area of the facility "to be free from the high levels of Environmental Tobacco Smoke (ETS) that was routinely discharged from other prisoners' cigarettes." Defendants refused this request and instead housed Plaintiff in A-Unit where he was exposed to ETS. Plaintiff asserts that being subjected to ETS

violated his Eighth Amendment right to be free from cruel and unusual punishment. The Honorable Janet T. Neff previously dismissed Plaintiff's ETS claim, finding that "Plaintiff's ETS allegations fail to state an Eighth Amendment claim." (Dkt. #6).

Defendants later painted A-Unit in an attempt to "cover up the evidence of heavy smoking." The paint selected was "highly toxic" and emitted "extremely hazardous fumes." The use of this paint caused "many prisoners," including Plaintiff, to experience dizziness, nausea, lethargy, "organ pains," and nose bleeds. Moreover, during the time that A-Unit was being painted, Defendants "turn[ed] off the power at night" which prevented prisoners from using their "small room fans," the "only source of ventilation in the cells." After receiving "numerous grievances" on the subject, Defendants "halted the painting after approximately two weeks." Defendants, however, "still refused to allow the fans on at night, to permit circulation of the air which was now heavily laden with ETS and toxic paint fumes." Plaintiff asserts that being exposed to toxic paint fumes violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff was later transferred to another facility. Plaintiff alleges that he was transferred as retaliation for filing the present lawsuit. As a result of his transfer, Plaintiff lost his prison job and "was deprived of [his] vegan diet." This transfer also removed Plaintiff from "one of the few prisons that taught and employed him in his career field: an electronic technician."

Plaintiff initiated the present action on December 31, 2008, against Mary Berghuis, Rick Smith, Mark Sutherby, and Roger Smead. Plaintiff requests monetary and injunctive relief. As previously noted, Plaintiff's ETS claim has already been dismissed. Defendants now move for summary judgment as to Plaintiff's toxic paint fumes claim and retaliatory transfer claim.

**STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.        Personal versus Official Capacity**

Defendants assert that they are entitled to summary judgment on the basis of qualified immunity. Qualified immunity protects government officials from claims seeking damages against them in their personal capacity. Before addressing Defendants' claim of qualified immunity, therefore, the Court must first determine whether Plaintiff has even sued Defendants in their personal capacity.

In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit stated that plaintiffs "seeking damages under § 1983 [are required to] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Id.* at 592. In response to courts interpreting this language as imposing a "a per se rule

requiring § 1983 plaintiffs to affirmatively plead 'individual capacity' in the complaint," the Sixth Circuit revisited this is issue in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001) (*en banc*).

Rejecting "such a strict interpretation," the *Moore* court observed that "[u]nder *Wells v. Brown*, absent *any* indication that these defendants are being sued individually, we must assume that they are being sued in their official capacities." *Moore*, 272 F.3d at 772. Accordingly, "[a]ll a [§ 1983] complaint need do is afford the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" The court concluded that "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* (internal citation omitted). The Sixth Circuit more recently reaffirmed this approach to determining whether a plaintiff's claims are asserted against a defendant in her official or personal capacity. *See Beil v. Lake Erie Correction Records Department*, 282 Fed. Appx. 363, 367 (6th Cir., June 13, 2008).

While no bright line rule exists to resolve this particular issue, the Sixth Circuit has nevertheless provided some guidance. For example, where a plaintiff, one month after the filing of a complaint, filed a motion "stating that the defendants acted outside the scope of their employment and in bad faith," such was sufficient to put the defendant on notice that he was being sued in his personal capacity. *Moore*, 272 F.3d at 772 (citation omitted). Other post-complaint pleadings, including the plaintiff's response to a motion for summary judgment, may also be relevant to determining whether the defendant has been provided sufficient notice that she is being sued in her personal capacity. *See Moore*, 272 F.3d at 772 (citation omitted). Furthermore, where a defendant asserts a defense of qualified immunity, which is available only as to claims asserted against a defendant in her personal capacity, such "indicates that the defendants were aware they could be held personally liable." *Garcia v. Dykstra*, 260

Fed. Appx. 887, 895 (6th Cir., Jan. 24, 2008) (citation omitted). However, if the only indication that the defendant might be subjected to personal liability is that the plaintiff requested monetary damages, such is insufficient to put the defendant on notice that she is being sued in her personal capacity. *See Beil*, 282 Fed. Appx. at 367.

Plaintiff has failed to specifically indicate in any of his complaints whether he is suing Defendants in their official and/or personal capacity. Defendants, however, have asserted that they are entitled to qualified immunity. Defendants have also asserted that they are entitled to Eleventh Amendment immunity, which as noted below is available only as to claims for monetary damages asserted against a defendant in her official capacity.

The assertion of qualified immunity and Eleventh Amendment immunity, along with Plaintiff's clear request for monetary and equitable relief, is sufficient to establish that Plaintiff has sued Defendants in both their official and personal capacity. *See Garcia*, 260 Fed. Appx. at 895 ("the demand for money damages, along with something more, here the qualified immunity defense asserted in the answer and amended answer, demonstrates that Smutz and Pavlige were aware of potential liability in their individual capacities").

**II.        Eleventh Amendment Immunity**

Defendants assert that they are entitled to immunity under the Eleventh Amendment as to those claims asserted against them in their official capacity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of

any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As previously noted, Plaintiff seeks both monetary and injunctive relief in this action. The Court finds that Defendants are entitled, under the Eleventh Amendment, to immunity as to Plaintiff's claims for monetary damages against them in their official capacity. Such immunity does not, however, extend to Plaintiff's claims for prospective injunctive relief. Accordingly, the Court recommends that Plaintiff's claims for monetary damages asserted against Defendants in their official capacity be dismissed.

**III.      Toxic Fumes Claim**

Plaintiff asserts that being exposed to toxic paint fumes violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendants first assert that this allegation fails to state a claim on which relief may be granted. However, in support of their position Defendants rely on evidence outside Plaintiff's pleadings. Federal Rule of Civil Procedure 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court has not excluded this evidence. Thus, Plaintiff's motion for relief on the ground that Plaintiff has failed to state a claim on which relief may be granted is hereby converted to a motion for summary judgment.[1]

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendants' conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

---

[1] The Court's action in this regard does not prejudice Defendants, as Plaintiff has clearly stated a claim on which relief may be granted regarding his allegations that he was exposed to dangerous paint fumes in violation of the Eighth Amendment. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009).

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). To establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

A. Objective Prong

In his Second Amended Complaint, Plaintiff asserts that as a result of breathing toxic paint fumes he "became dizzy, nauseous, lethargic, [and] suffered organ pains." Defendants argue that Plaintiff cannot satisfy the objective prong of the analysis because when Plaintiff was examined by Health Services he "described his ailments as headaches, burning eye sensation and pain in his liver." Defendants also argue that "[t]his was the only time [Plaintiff] requested medical services because of paint fumes." Defendants further assert that they are entitled to relief because Plaintiff "complained of headaches, shortness of breath, cough and fatigue months before the painting project began."

Defendants assert that the paint in question was applied in Plaintiff's housing unit from December 2, 2008, through December 5, 2008. (Dkt. #55 at 5). On December 7, 2008, Plaintiff reported to Health Services that "the pain[t] in the unit is cousing (sic) me headaches and, burn my eyes, and pain in my liver." (Dkt. #55, Exhibit A). The Court is puzzled at Defendants' assertion that this evidence

supports their request for relief. Plaintiff's report to his medical care providers is entirely consistent with the allegations in his complaint, namely that he was experiencing an adverse physical reaction to the paint being applied in his housing unit.

As for Defendants' argument that Plaintiff only once requested medical treatment "because of paint fumes," such may be relevant but it is hardly dispositive. Plaintiff is not asserting that he was denied medical treatment, as suggested by Defendants' argument, but is instead alleging that he was subjected to unsafe living conditions. In the context of a conditions of confinement claim such as this, Plaintiff is not required to established that he has, in fact, already suffered an adverse consequence from the alleged threat. As the Supreme Court has stated:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. In *Hutto v. Finney*, 437 U.S. 678, 682, 98 S.Ct. 2565, 2569, 57 L.Ed.2d 522 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.
>
> That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. . .We thus reject petitioners' central thesis that only deliberate

> indifference to current serious health problems of inmates is actionable under the Eighth Amendment.

*Helling v. McKinney*, 509 U.S. 25, 33 (1993).

The Court is likewise puzzled by Defendants' argument that the fact that Plaintiff was experiencing respiratory difficulties prior to the application of the paint in question advances their cause. As Defendants note, in August, September, and October 2008, Plaintiff reported experiencing coughing, headaches, fatigue, and shortness of breath caused by second hand smoke in his housing unit. (Dkt. #55, Exhibit B). To prevail on his conditions of confinement claim, Plaintiff must establish that the risk of which he complains "is not one that today's society chooses to tolerate." *Id.* at 36. While society *may* be willing to accept a circumstance in which a healthy prisoner is subjected to a certain level of paint fumes, it is not unreasonable to conclude that society is far less likely to tolerate subjecting a prisoner with a demonstrated history of respiratory irritation to potentially hazardous paint fumes. Thus, the Court fails to discern how this evidence supports Defendants' position.

Plaintiff has submitted a copy of a Material Safety Data Sheet (MSDS) which appears to concern the paint in question. (Dkt. #63, Exhibit 14). The MSDS provides that "prolonged" inhalation of this paint can produce the following effects: irritation of the respiratory tract, headache, dizziness and/or lightheadedness, nausea, vomiting, blurred vision, coughing, difficulty with speech, central nervous system depression, breathing difficulty, tremors, severe lung irritation or damage, liver damage, kidney damage, pulmonary edema, convulsions, respiratory failure, asphyxiation, and death. It is also noted that the following medical conditions are "aggravated by exposure" to this paint: eye, skin, respiratory disorders, lung disorders, and asthma-like conditions. Accordingly, the MSDS instructs to use the paint "only with adequate ventilation" and "avoid contact with skin and eyes, and breathing of vapors."

Plaintiff has submitted an affidavit in which he describes the various ill effects he experienced after being exposed to the paint in question. (Dkt. #63, Exhibit 12). Plaintiff asserts that Defendant Smith was "personally told. . .that the paint was too toxic to use inside without proper ventilation, and that it was causing injury." *Id.* Despite this warning that proper ventilation was necessary, Plaintiff asserts that his cell "had no ventilation." *Id.* In his verified complaint, Plaintiff asserts that Defendants also refused to allow Plaintiff and other prisoners to operate their personal fans at night in an attempt to generate air circulation. (Dkt. #53). Plaintiff has also submitted affidavits from several prisoners who assert that they experienced adverse consequences after breathing paint fumes. (Dkt. #63, Exhibit 7).

In sum, the evidence thus far submitted indicates that there exists a genuine factual dispute as to whether Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm."

B. Subjective Prong

Defendants assert that Plaintiff cannot establish the subjective prong of the analysis because Plaintiff "does not allege that any of the Defendants selected the paint which [Plaintiff] alleges emitted toxic fumes, nor does [Plaintiff] allege that any of these Defendants applied the paint." This statement may be true, but it completely misses the point.

Plaintiff does not claim that Defendants selected or applied the paint in question. Instead, Plaintiff asserts that Defendants were specifically informed of the dangers presented by using the paint, but ignored such. Plaintiff further asserts that despite complaining to Defendants that he was suffering adverse consequences from the paint fumes, Defendants took absolutely no action and instead forced

him to suffer continued and lengthy exposure to dangerous paint fumes. Plaintiff has submitted evidence that each Defendant was personally informed of the danger presented by the paint fumes yet took no action.

In his verified response to Defendants' motion, Plaintiff asserts that in "late November" 2008, prior to the application of the paint in question, a Maintenance Supervisor informed Defendant Smead "that the prisoners in the housing unit should not inhale the fumes from that paint. And, at a minimum, prisoners should be allowed to keep their fans on, and open their cell-doors at night (as is allowed in the summer) to provide some air circulation." (Dkt. #63 at 44 of 53). Plaintiff asserts that on December 4, 2008, he sent two letters to Defendant Berghuis informing her that he was experiencing adverse effects from the paint fumes in his housing unit. (Dkt. #63 at 44 of 53; Dkt. #63, Exhibit 8). Plaintiff has also submitted copies of a grievance he filed concerning the paint fumes in question. Defendant Berghuis personally responded to (and rejected) Plaintiff's grievance at Step II of the grievance process. (Dkt. #63, Exhibit 1). Plaintiff asserts that on December 4, 2008, and December 5, 2008, he personally informed Defendants Smith and Sutherby that he was experiencing "pain" from the paint fumes. (Dkt. #63 at 45 of 53). Plaintiff also asserts that on December 4, 2008, two other prisoners informed Defendants that they were experiencing adverse effects from the paint fumes. (Dkt. # 63 at 45-46 of 53).

The evidence submitted by Plaintiff is sufficient to permit a reasonable juror to conclude that Defendants were aware of the risk and, by allegedly taking no action in response to Plaintiff's complaints, failed to "take reasonable measures to abate it." The Court notes that Defendants have each submitted (identical) affidavits in which they assert that "[d]uring the time when Allegan Housing Unit was being painted, Plaintiff Henry Hence #141983, did not complain to me about reactions he was

experiencing as a result of the painting." (Dkt. #55, Exhibits E-H). This evidence simply underscores that there exists a factual dispute concerning whether Defendants were aware of the alleged risk.

In sum, as discussed above, the Court concludes that Defendants have failed to establish the absence of a factual dispute concerning Plaintiff's Eighth Amendment claim. Accordingly, the undersigned recommends that Defendants' motion be denied as to this claim.[2]

### IV.      Retaliation Claim

Plaintiff asserts that Defendants violated his constitutional rights by transferring him to another correctional facility in retaliation for filing a grievance and initiating the present lawsuit.

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendants

---

[2] Defendants assert that they are entitled to qualified immunity as to this claim. Plaintiff's allegations state a claim for violation of his right to be free from cruel and unusual punishment. Defendants have failed to present evidence demonstrating the absence of a genuine factual dispute on this point. The right in question was clearly established long before the conduct giving rise to this action. Accordingly, the undersigned recommends that Defendants are not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

The Court also rejects Defendants' argument that Plaintiff "has not sufficiently alleged personal involvement of Defendants." As Defendants correctly assert, Plaintiff is required to alleged that Defendants "directly participated in the alleged wrongful conduct." *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"). Plaintiff's Eighth Amendment claims are not, as Defendants assert, based on respondeat superior liability. As discussed above, Plaintiff clearly asserts that Defendants were personally informed of the dangers associated with using the paint in question, but failed to correct the circumstance thereby compelling Plaintiff to endure unsafe living conditions in violation of the Eighth Amendment.

do not assert that Plaintiff was not engaged in protected conduct, but assert that Plaintiff cannot prevail on either the second or third elements of the analysis. The Court agrees.

        1.        Adverse Action Which Would Deter a Person of Ordinary Firmness

As is well recognized, "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted). Thus, unless there are "foreseeable consequences" to a transfer that would inhibit the prisoner's ability to engage in protected conduct, such transfer does not constitute an "adverse action" for purposes of the retaliation analysis. *Hix*, 196 Fed. Appx. at 358 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-04 (6th Cir. 2005)). While Plaintiff alleges that he experienced certain inconveniences as a result of his transfer, he has failed to demonstrate that such would prevent a person of ordinary firmness from engaging in protected conduct.

        2.  Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendants' subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient

to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Defendant Berghuis has submitted an affidavit in which she asserts that Plaintiff was transferred "due to bed space issues." (Dkt. #55, Exhibit J). Plaintiff has submitted no evidence calling this assertion into dispute. Moreover, the record does not contain a chronology of events from which retaliation can reasonably be inferred. Plaintiff asserts that he was transferred in retaliation for initiating the present lawsuit. As Defendants correctly observe, however, Plaintiff was transferred more than one month *before* the Court ordered that the present action be served on Defendants and more than two months *before* service of the complaint was effected. Defendants assert that they were unaware of this action prior to that time. Plaintiff has presented no evidence to the contrary. As for Plaintiff's contention that he was transferred in response to the grievance he filed, the Court notes that Plaintiff initiated the grievance in question long before he was transferred.

In sum, Plaintiff has failed to establish a chronology of events from which retaliation can plausibly be inferred. Moreover, Defendants have established that Plaintiff's transfer was unrelated to his protected conduct. Accordingly, the undersigned recommends that Defendants motion for summary judgment be granted as to Plaintiff's retaliation claim.

# **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #54), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's retaliation claim, but that Plaintiff's Eighth Amendment conditions of confinement claim be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                    Respectfully submitted,

Date: January 12, 2011                 /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge